Good morning, Your Honor. I'm Jim Morrissey from the Office of the State Appellate Defender. Mr. Morrissey? Good morning, Your Honors. Mary Needham, N-E-E-D-H-A-M, on behalf of the people of the State of Illinois. Ms. Needham? Very good. Mr. Morrissey, you may proceed. At this time, I'd also like to reserve three minutes for reply. Your Honor, the new DNA evidence in this case would probably change the result of a new trial because it supports a factual situation that is completely different from the testimony of the co-defendant, Zarise Johnson. And the jury will not need to reassess the already questionable credibility of Mr. Johnson in light of this new evidence. Under that, wouldn't somebody have to actually have the guts to argue to a jury that the victim's ex-husband's DNA indicated that the ex-husband murdered her, borrowing Mr. Brown's car to do so? Right? Well, in this case, there are two pieces of new evidence. Correct, Your Honor. Okay. A vaginal swab and sanitary pad. Now, Mr. Johnson did testify at trial, but during the course of events in this case, Mr. Brown assaulted Ms. Lewis in the backseat of his car for approximately a half hour. The State also called Pamela Fish, a forensic scientist. She testified that she tested swabs taken from Ms. Lewis's body for the presence of semen. She then informed the jury that no semen was present on any of these swabs. So how does that implicate anybody, including Mr. Brown? Well, Your Honor, new testing has now revealed that, in fact, there was semen on these swabs. Yes, and it's her ex-husband. And it can exclude my client from the DNA on that. And when it was run through CODIS, it did link to Mr. Hudson, who is the victim's estranged husband. So doesn't that help the State's theory? Isn't the theory behind DNA evidence, when the person is unidentified, that there may be some stranger danger, rapist, serial killer out there? Who's not Mr. Brown? No, just somebody wrong. In this case, the DNA is run. It doesn't come back to some unknown serial rapist, Mr. Killer. It comes back to her ex-husband who said, I had consensual sex with her shortly before she died. He doesn't know the dates because he's not brought in until years later. How does that help your client? It helps our client because it changes the entire evidentiary picture, as it was presented to the jury in this case, Your Honor. He was convicted on testimony, though. He was convicted on testimony, not on DNA. He was convicted on the testimony of Mr. Johnson, who testified that he assaulted Ms. Lewis for a half hour in the backseat of his car. Now there's new DNA evidence that shows that he can be affirmatively excluded from the contributor of the semen found in Ms. Lewis' vaginal swab and on the sanitary pad. But there's strong controversy about the results of that DNA evidence and how little there was to be able to find out of it because, after this prolonged sexual assault that's been described by Mr. Johnson, that there's very little tangible evidence involving the DNA. There's no really conclusive determination from this other than Antoine Thompson, Hudson rather, being the only one who's identified out of all of this in this prolonged sexual assault. So what reliance, and it was put in by stipulation. There was no testimony. There was no cross-examination. There's a footnote in one of the briefs in which they discuss and question subsequently, but it's not developed, it's not in the record, that the woman, Ms. Fish, who did this, has other issues in relation to the reliability of her testing in other cases. So what can the court do to determine out of this graphic and long term of sexual assault and the paucity of information that surrounds it? Well, number one, Your Honor, you're correct in pointing out that Mr. Brown's entire conviction essentially rests on the testimony of Mr. Johnson relating to this rather lengthy assault that took place in the car. Now in light of this new DNA evidence, the jury could conclude that Mr. Johnson was lying about the course of events that took place that night, and that Mr. Brown in fact did not sexually assault Mrs. Lewis that evening. If it does determine that he was lying about that assault, then it could conclude that his entire account of events that evening was not credible. But it doesn't conclusively exonerate him, does it? Not necessarily, Your Honor. No, you mean no, or yes. Yes, Judge, you're right. It does not conclusively exonerate him. Well, as the Illinois Supreme Court pointed out in People v. Ortiz, even though the new evidence may not definitively prove his innocence, the state's witnesses now need to be more scrutinized, more closely scrutinized in light of this new evidence. Here the jury very well conclude that during the course of this lengthy sexual assault, some DNA evidence may result in Mrs. Lewis. Here there was in fact semen evidence, and Mr. Brown can be conclusively excluded as the donor of that semen. When did Mr. Johnson implicate Mr. Brown? I believe it was during a lengthy interrogation by the police. Immediately. So within, you know, let me say lengthy, a few hours of the arrest. So it's not like Mr. Johnson had his case pending for the average of 26 or 23 years and then said, I'd like to flip on my partner. Within hours of being picked up by the police in a car where the proceeds are at, your defendant's car, your client's car, he says the defendant was involved and here's what he did. Okay. Just on that I'd like to point out one thing. Is that correct? That is correct, Your Honor. Yes. However, this very division decided a case back in November involving Mr., our co-defendant in this case, Carl Williams, and Mr. Johnson actually admitted in that case that he falsely implicated Mr. Williams in this case after being tortured and beaten by the Chicago police officers for quite some time. So based on this and in addition to this new DNA evidence, which could very much so undermine his account of the events that took place that night. Has Mr. Johnson recanted his testimony against Mr. Brown? He has not, Your Honor. No, not at this point. So then there's a difference with his evidence against Carl Williams, would that be? It is different. However, now that witness is an admitted liar who falsely implicated another co-defendant in this case. When you received two post-conviction reviews, what, but Mr. Johnson has never been offered or testified in this matter since? He has not, Your Honor. No, that has not been investigated to this point in this case. What's involved right now in this new review is this new DNA evidence that has since come to light since the trial. Now, as I said, with this new DNA evidence, the jury very well conclude that Mr. Brown was lying about the assault in this case, and if it determines that he was lying about the assault in this case, it could very well so question his entire account of the events. What evidence did the new DNA evidence produce, which could be used to attack Mr. Johnson's testimony? Well, Your Honor, this vaginal swab and sanitary pad, the jury was originally told at the first trial that there was no semen in this case. Now this new evidence shows that there, in fact, was semen on the vaginal swab and sanitary pad, and that my client can be excluded as the contributor of that semen. Now, Going back to Johnson, the question I asked was what evidence does the DNA, you're harping that this DNA evidence contradicts everything that Johnson said. What does, in what manner, does the new DNA evidence contradict in any way Mr. Johnson's trial testimony? The fact that Mr. Brown would have assaulted Ms. Lewis in the backseat of this car, the fact that Mr. Johnson testified, the jury very well so could conclude that he was lying about his account of that events, considering if Mr. Brown did not leave any DNA evidence, and in fact left it intact. They knew that. Right? They were told at the initial trial, Johnson testifies as lengthy, multiple rape, and they were told by Pam Fish then there was no evidence, semen evidence, to indicate Mr. Brown's involvement. However, Your Honor, this is not a case where there is no semen evidence. They were told by Ms. Fish there was no semen evidence. In fact, there is semen evidence in this case, and it excludes. Okay, and that's what shows that Johnson's a liar? It undermines his account of events that evening. The jury very well could conclude that based on this new DNA evidence, he was lying that this assault even took place. So he lied to protect the ex-husband, who was actually the rapist, and they had borrowed Mr. Brown's car? Mr. Hudson's identity and his very existence was not even known until this DNA was run through the CODIS system in this case. Therefore, the police never investigated if he was involved in this case. They never showed his picture to Mr. Fitch, another witness in this case who identified a co-defendant. And additionally, in his affidavit, Mr. Hudson never denies being involved in this crime or when the last time it was that he saw his wife. So frankly, it really is not investigated whether Mr. Hudson is involved in this case or not. However, in this case, there's actually two different pieces of new DNA evidence. The first is the vaginal swab and sanitary pad, but I'd like to now move on to the boxer's evidence, if there's no more questions about the sanitary pad. Now, at trial, Ms. Fitch testified that she took a cutting from Mr. Brown's boxers, and she tested this cutting, and it revealed it was a mixture of human blood and semen. However, no further conclusions could be made from that, from those samples. The State relied on this to support Johnson's testimony, calling it the most important evidence that corroborates what Johnson is saying. The State went out then to argue that this blood affirmatively was a match to Ms. Lewis on Mr. Brown's boxers. However, new testing was done in this case, comparing Ms. Lewis's DNA profile to the DNA profile of the blood on the boxers. Now, what that produced was an incomplete profile at 9 of 13 loci, and no conclusion could be made at the remaining 4 of 13 loci. Was that evidence presented at trial or at the post-conviction hearing? In fact, this was discussed in the post-conviction petition and in the briefs. So what evidence was there in terms of blood work that tied the victim to the defendant's shorts? At trial, you got it? Yes, at trial. Okay. Well, at trial, Ms. Fitch just said it was human blood and semen, and the State then argued during their closing and rebuttal closing that this affirmatively was Ms. Lewis's blood on the boxer shorts. Well, apparently it's not her semen, right? She's a female. Correct. So they argued that the blood, even though no doctor, no expert testified, that was related to Mr. Brown, they just argued, and that shows it's him. Essentially, they said it's there because the physical evidence tells you it's there. It's there because Zarbis tells you how Ms. Lewis was raped. Essentially, affirmatively arguing to the jury, the blood on Mr. Brown's underpants was, in fact, Ms. Lewis's. Now, this new DNA testing, what it determined is that Ms. Lewis only cannot be excluded as a possible secondary source of the blood on those boxers. However, the statistical probabilities then given for that show that individuals from three separate ethnicities have about the same statistical probability of being also included in that stain. And what are those probabilities? The probabilities are 1 in 330,000 Caucasian, 1 in 510,000 African American, and 1 in 330,000 Hispanic. Now, what this test essentially shows, excuse me, okay, what this test essentially shows is that it cannot be, Ms. Lewis cannot be positively tied to the blood on the defendant's boxer shorts. Well, actually during closing and rebuttal closing, the state did argue to the jury that it affirmatively was Ms. Lewis's blood on his boxer shorts. Any blood work stats that supported that, did they? Well, actually, they did not have statistics or any blood work to support that. And now the statistics are 1 in 300,000, it's somebody else? Or 1 out of every 330,000 people could have supplied that? Essentially, yes, Your Honor. That's pretty rare, too, is it not? That's actually pretty low when we're talking about DNA statistical probabilities. But in the real world, that's going to be from quadrillions worth of DNA. So the odds of this being somebody of the Caucasian race, whatever the numbers are, let's say they're all 300,000. So the odds of this being somebody other than Ms. Lewis, or the blood that is found on the defendant's shorts could come back to any one of 300,000 Caucasian people, one of any roughly 300,000 black people, one of any 300,000 Hispanic. Sure. Essentially, there's a pool of people in this case that potentially cannot be excluded as potential donors of the blood on the boxers. Now, one in 300,000 Caucasian people would not be excluded from that pool, is essentially what those statistics mean. So, let's take that to America, roughly 300 million people. Sure. So, you brought it up. So, one in 300,000, there's 300 million people roughly in America. So the odds of, in America, there are 1,000 Caucasians with that same blood type, same blood, nine loci, there's 1,000 black people with the same loci, and 1,000 people of Asian or Hispanic. Sure. Right? So, there's 3,000 people. One of those people, in the whole United States, there's 3,000 people who could have done it, but one of those 3,000 people who could have done it was this victim.  Correct, Your Honor. However, the significance. Well, they had much better than nobody, which is what they had at trial. Not necessarily, because actually what this evidence does show now is that Miss Lewis cannot be positively identified as the person who contributed the blood to Mr. Brown's boxers. At the initial trial, the jury was never told that she was positively identified. In fact, they were. During the state's closing and rebuttal closing, they did argue that it affirmatively was Miss Lewis's blood on Mr. Brown's boxers. But now, all we can say is that one out of, there might be 2,999 other people walking in America today, in addition to Miss Lewis, who could have left that blood. According to those statistical probabilities, yes, that's possibly what that evidence shows. At the initial trial, they narrowed it down from the world, down to 3,000 people in America today. Your Honor, the vaginal swab and sanitary pad, excluding my client as the contributor of the semen, in addition with the fact that now Miss Lewis cannot be positively identified as the person who contributed the blood to Mr. Brown's boxers, does change the evidentiary picture that was presented to the jury at trial, and significantly undermines the already questionable credibility of Mr. Johnson. And they very well could determine that Mr. Johnson's testimony lacked any credibility, and Mr. Brown was not involved in this crime whatsoever. If you want three minutes, you best conclude now. Thank you, Your Honor. May it please the Court. Your Honors, the post-conviction claim, the successive post-conviction claim, is actual innocence. But the DNA evidence that was presented at the evidentiary hearing, doesn't exonerate defendant, and it doesn't vindicate him, and it doesn't show his actual innocence. Defendant acknowledged at the hearing, he acknowledges in his brief, and in his oral argument, this evidence is not really exonerating. That should be the end of the story. Because his burden is to make a substantial showing that this evidence is so conclusive that it would change the outcome of trial, and he'd be acquitted. Doesn't he show that the trial court, the trial court's determination was manifestly erroneous? Yes, he must. Manifestly. Manifestly, meaning the trial court was indisputably wrong, based on the evidence that was presented at the hearing, in denying post-conviction relief. He can't meet that burden. It's well established that DNA evidence, medical evidence, scientific evidence, is not required to establish a sexual assault. Which, by the way, sexual assault was just one of the offenses defendant committed. This is not just strictly a sexual assault case. Nor was the, at trial, the testimony was that semen could not be extracted from the vaginal swab. The testimony, the evidence at the evidentiary hearing presented now, it goes, it just said biological materials. Pam Fish is not significantly impeached. At trial, the jury heard that DNA could not be tied to defendant. Now we know the DNA testing shows defendant is not tied to the vaginal swab. There was not very much, considering the length of this sexual contact, there was so little that was available in terms of what could be looked at scientifically to make these determinations. But in part of the determinations, it's done by a locale. And they never did the 13 locales. The most they did was a six or a nine. And so that diminished the chance of reducing the numbers that Justice Quinn was talking about. In terms of identifying what this was. As a matter of fact, there was so little in describing this. Mr. Johnson describes it in the length of it. And the jury was, I believe, told that she had been menstruating at the time of this. And even with that, there was hardly any physical tangible evidence that was available for scientific examination. And of that, they didn't do a complete examination by using 13 locales. What sample are you speaking of? All of them. You actually took the back seat out of the car so you could take a stain off of that. Right. I mean, we're talking about the way Mr. Johnson describes this assault is prolonged and shocking. And there's very little scientific evidence that comes out of what he describes. Right. There doesn't have to be scientific evidence. The testimony is that he is sexually assaulting her numerous ways, having her move around, this, that, and the other thing. And there doesn't have to be evidence that defendant left his DNA there. You know, in all of this, he flipped for the state. The state made a deal with him. The people decided that they were going to cut a deal with Mr. Johnson. And there's a question about whether or not what motivated his testimony. Yes, there was. And all that was before the jury. The jury heard that he was an accomplice. He testified to his plea agreement. The jury was instructed that he was an accomplice and that his testimony should be viewed with caution. Those arguments were made to the jury. The jury found him guilty because the jury properly knows what anyone understands is that you don't have to leave fluid to commit a sexual assault or leave your DNA. And just the absence of it doesn't mean that offense didn't occur. And defendant raised that claim on direct appeal, attacking the credibility, saying there's no DNA evidence. And the Supreme Court said there's sufficient corroboration for Johnson's account. And as far as your remarks regarding they didn't do full loci examinations, that's not true with regard to all of the evidence. That's not what the evidence at the evidentiary hearing showed either. Our Supreme Court recently came down with a case of People v. English where they held that we're a trial court, or a post-conviction court rather, did not hear evidence. The dissent, actually the concurrence of Justice Freeman would suggest it's really a second stage review as opposed to a third stage. Why should we review this as a third stage? What is different about this case compared to English? I haven't read English. No problem. I think the third stage review applies here because this was a third stage evidentiary hearing. It was in English as well. Oh, okay. They didn't hear any live testimony. There was no live testimony here either, is that right? This was done by stipulation. That's correct, in affidavits. That's correct. Does it make much of a difference if the original jury was told there's no DNA evidence connecting him in this thing? And now we now know that, yes, there was DNA, but he was not there. What's the difference? Look, there is no difference, Your Honor. There is no difference. That's accumulative evidence. It's not conclusive material evidence that he's actually innocent. And these claims that somehow Antwon Hudson, the estranged husband, was on a date, I mean, it just doesn't make any sense. There's never been any evidence whatsoever to suggest that Antwon Hudson was involved in these offenses. And it's actually offensive to suggest that the victim's husband's DNA suggests that he committed this offense. This is not his DNA did turn up in a CODA search of the Illinois database, but it should be noted that his was the only one that showed up in that database. No other offenders were revealed in that search. Defendants also arguing about the boxer shorts, which is not proper. There was no evidence presented at the evidentiary hearing regarding the boxer shorts. And he's also misstated the evidence with regard to the boxer shorts. There were two tests done on the boxer shorts. And the nine loci test had to do with the stains that were found from the boxer shorts, People's Exhibit Number 31. But the blood and semen sample that was cut out of defendant's underwear, which that's not a nine of 13 loci case. And that's the DNA evidence showed she could not be excluded as a contributor. And far from suggesting that defendant is innocent, that is evidence of his innocence, that only further supports the people's case that, in fact, defendant was the offender who sexually assaulted her. You have to remember, defendant's underwear was taken from him, and there was evidence that he didn't have any kind of injury that would lead to blood being on his underwear. But the victim was complaining that she was menstruating at the time. And now there's blood and semen mixture in defendant's underwear from which she cannot be excluded. And those numbers might seem small in the sense of statistics and the population, but they're not considered in a vacuum. They're considered in the context of this case. How likely is it, how coincident is it that the bloodstain that's found in defendant's underwear, the victim cannot be excluded? Not likely at all. That's evidence that defendant is guilty. Further evidence that the people would admit. In any event, the nine of 13 loci and the box of short evidence was not admitted at trial, at the hearing, and should not be before this court. If you have no further questions, we'd ask you to affirm the trial court's proper denial of post-conviction relief where defendant failed to make a substantial showing that he was actually innocent of the offenses. Thank you. Thank you. Just a few quick points. First, the state says that the new evidence does not show total vindication or exoneration. Mr. Brown does not need to prove who committed this offense. In fact, it's just that the new evidence needs to be of such a character that it would probably change the result of a new trial. Second, this evidence is not cumulative. First, at trial, there was just no inculpatory DNA evidence tying Mr. Brown to the offense. Now there is exculpatory DNA that was never presented to the jury. Therefore, it's not cumulative and changes the evidentiary picture as it was presented to the jury. Next, Your Honor, just regarding the cutting from the boxers versus the boxers themselves, the state tries to paint this as they're two completely pieces of evidence. The cutting is just a smaller cutting from the larger stain on the boxers. These aren't two separate stains that we're discussing here. In fact, the cutting from the boxers is even less probative of the blood coming from Ms. Lewis than the larger stain on the boxers themselves. And finally, there's no test for when blood was deposited on the boxers, so the blood could have been on these boxers for quite some time before they were collected. Therefore, Your Honor, the new evidence in this case changes the evidentiary picture as it was presented to the jury and further undermines the already questionable credibility of Mr. Johnson. And this case should be remanded for a new trial so the jury can reassess Mr. Johnson's credibility in light of this new evidence. Thank you. Thank you, sir. Thank you. Any other questions? No, thank you. The court will take this matter under advisory.